THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| SHERRI SPAULDING, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 3:11CV420 |
| ) | |
| VERIZON VIRGINIA, INC. ) | |
| ) | |
| Serve: CT Corporation System ) | |
| Registered Agent ) | |
| 4701 Cox Road, Suite 301 ) | PLAINTIFF'S COMPLAINT |
| Glen Allen, VA  23060 ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Sherri R. Spaulding, by Counsel, and sets forth her allegations against the Defendant as follows:

### Introduction

1. This complaint presents a civil action alleging retaliation based on the filing of an EEOC charge based on unlawful discrimination based on sex and disability.

## Parties

### Plaintiff

2. Sherri Spaulding ("Spaulding") is a female citizen of the United States and a resident of Gum Spring, Virginia. Spaulding is employed by Verizon Business Network Services, Inc. as a Central Office Technician.

### Defendant

3. Defendant Verizon Business Network Services ("Verizon") is a corporation whose principal place of business is in New York City, New York. The company operates stores nationwide and has at least 30 locations within the jurisdiction of this Court.

4. Verizon engages in an industry affecting commerce and employs in excess of fifteen employees for each working day in the current and preceding calendar year. Accordingly, Verizon is an employer as defined by 701(b) of the Civil Rights Act of 1964, as amended *[42 U.S.C. § 2000e(b)]*, and Section 12111(5) of the Americans with Disabilities Act of 1990, as amended. *42 U.S.C. § 12111(5)*.

**Jurisdiction and Venue**

5. This action seeks declaratory judgment, injunctive relief, compensatory and punitive damages for Defendants' acts of retaliation against the Plaintiff based on violation of federal and state law.

6. This Court has jurisdiction over the claims in this action arising under the laws of the United States pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), as amended by the Civil

Rights Act of 1991, 42 U.S.C. § 2000e-5(f)(3), and the Americans with Disabilities Act of 1990, as amended ("ADA").

7. The events or omissions giving rise to this action arose within the Richmond Division of the United States District Court for the Eastern District of Virginia and this venue is appropriate under 28 U.S.C. § 1391(d).

8. This Court has jurisdiction over the Defendant herein because they regularly conduct business within the Richmond Division of the United States District Court for the Eastern District of Virginia.

9. Plaintiff initially filed a timely EEOC charge (#438-2009-00697) of sex discrimination and retaliation against Verizon on February 12, 2009.

10. Plaintiff filed an amended EEOC charge of disability discrimination on July 14, 2009.

11. Plaintiff filed a second amendment to her EEOC charge on September 2, 2009, based on continued retaliation.

12. The Plaintiff filed a second and separate EEOC charge (#438-2010-00775) on September 2, 2010, due to the datedness of the initial charge and continued instances of harassment.

13. On September 14, 2010, the U.S. EEOC (Richmond Local Office) issued a Notice of Right to Sue to Plaintiff for EEOC Charge #438-2009-00697.

14. The EEOC issued a Notice of Right to Sue on Charge # 438-2010-00775 on May 18, 2011.

15. Plaintiff files suit under Title VII and the ADA within 90 days of receipt of the EEOC's issuance of the Notice of Right to Sue.

## Facts

16. Spaulding is a 37-year-old, Caucasian female who has worked for Verizon (formerly Bell Atlantic) since March 10, 1998, as a Central Office Technician.

17. As a Central Office Technician, Spaulding's job includes repairing switches that route phone calls, multiplexers (conduits for band width), and fiber optics in the field.

18. Before working for Verizon, she worked for both Southwestern Bell in Houston, Texas and for Bell South in Jacksonville, Florida for three or four years.

19. Spaulding's annual salary is approximately $60,000.00 a year, with access to a company vehicle and other fringe benefits.

20. Spaulding has worked in various offices in Virginia, and currently works out of the Gayton Office in Glen Allen, Virginia.

21. In 2008 and 2009, Spaulding worked out of the Rockville, Goochland, and Manakin Offices.

22. Spaulding has received commendations for outstanding service during her tenure with the company.

23. Spaulding has also been a member of the Communications Workers of America, Local 2201 (union) for the same amount of time.

24. Spaulding has had several managers during the period relevant to this complaint.

25. William "Bill" McNabb, CO Supervisor – Richmond Northeast, was Spaulding's immediate supervisor for the majority of 2008.

26. For the relevant part of this complaint, Spaulding's second level supervisor was Pamela Dwyer, Manager of Network Operations – Central Virginia.

27. For the relevant part of this complaint, Spaulding's third level supervisor was Ki-Ho Wilson, Director of Network Operations – Central Virginia.

28. From November 2008 until June 2010, Gary Burton, Central Office (CO) Supervisor – Richmond Northwest, was Spaulding's supervisor.

29. From June 2010 until February 2011, David Deas, CO Supervisor – Richmond Northeast, was Spaulding's supervisor.

30. On February 12, 2009, Spaulding filed an EEOC charge of discrimination based on sex (female) and retaliation against Verizon perpetrated by Jim Wilson, a male counterpart, and their male supervisor, William McNabb.

31. The charge was based on several actions that took place between July 2008 and December 2008.

32. The charge alleged that Spaulding had been subjected to a hostile work environment in 2008 based on sex and sex discrimination due to Mr. McNabb allowing Jim Wilson, a male counterpart, to critique and ridicule her in meetings and in front of peers about her work performance, the condition of her assigned office, and using company time to build her house.

33. Spaulding endured Mr. Wilson's accusations and inappropriate behavior from July 2008 through December 2008.

34. Mr. Wilson's accusations were untrue, and yet, Mr. McNabb appeared to condone Mr. Wilson's inappropriate behavior.

35. A reorganization took place in November 2008, and Spaulding remained in Goochland, but reported to Gary Burton.

36. Despite the change direct supervision, Spaulding still endured Wilson's presence and the continuation of work hostility from Mr. Burton, who was aware of Spaulding's issues with his colleague, McNabb.

37. Burton allowed Wilson to deliberately maintain a presence at Spaulding's office knowing the issues Spaulding complained of involved him.

38. Spaulding sought assistance and guidance from Pamela Dwyer and Ki-Ho Wilson regarding Mr. Jim Wilson's continued behavior, but to no avail.

39. Verizon also suggested that Spaulding and Wilson attend joint counseling which would only aggravate the tension that existed between the two employees.

40. Spaulding also filed a union grievance regarding Wilson's behavior in December 2008 to address Wilson's behavior on the job, as well.

41. Due to the protracted pace of the union grievance, Spaulding filed an internal complaint with Verizon Human Resources in order to address Wilson's inappropriate behavior and McNabb's condonation and facilitation of it.

42. Verizon allegedly conducted an investigation of Spaulding's concerns, but none of the witnesses that she identified for Human Resources to support her complaints were interviewed.

43. Following their investigation, Verizon Human Resources determined the relationship between Mr. McNabb and Mr. Wilson was unethical and required management to separate the two. At which time, Mr. Wilson was moved from Mr. McNabb's supervision to Gary Burton's and then assigned to report to the office in close proximity to Spaulding.

44. Despite admissions by the then union Vice President, Kimberly Johnson, concerning Wilson's troublesome behavior, Spaulding was told that Wilson was being protected and that no action would be taken against him.

45. After Verizon completed its internal investigation, Spaulding became the focus of an investigation This investigation was conducted by McNabb along with Gary Burton in which Spaulding was then painted as the problem and not Wilson or McNabb.

46. During the investigation, it was brought to Spaulding's attention that Mr. Burton was becoming agitated and angry while conducting the investigation with McNabb concerning her.

47. Because the stress of the work environment and mounting tension had taken its toll on Spaulding, she went out on company medical leave and short-term disability for work-related stress and depression from February 11, 2009, until June 28, 2009.

48. On June 7, 2009, Linda C. Kane, LCSW, MAC (Spaulding's therapist) wrote a letter stating that she had been treating Spaulding since October 30, 2008, and that she suffered from depression and anxiety.

49. Ms. Kane recommended that Spaulding have no contact with Jim Wilson, Gary Burton, Bill McNabb, or Pam Dwyer. She also recommended that Spaulding be kept in familiar surroundings and provided with a physically and emotionally safe work environment. Last, she recommended that Spaulding be allowed sufficient time off for continued mental health therapy as needed.

50. On June 12, 2009, Spaulding, through counsel, communicated the requested work accommodations to Verizon company counsel, Paul Griffin.

51. On June 23, 2009, Griffin responded that there should be no need for Spaulding to have contact with Jim Wilson unless there is a need to cover for an employee's absence from work for "lengths of time." He denied the request for no contact with Gary Burton, Pamela Dwyer, and Jim Wilson. He also stated that Spaulding should schedule mental health therapy appointment during non-working hours through FMLA, and if not, alternate discussions could take place.

52. On June 25, 2009, Spaulding's counsel informed Griffin that Burton actively pursued an investigation against her in January 2009 after she complained about unethical practices between Mr. McNabb and Jim Wilson.

53. On June 26, 2009, Griffin informed Spaulding's counsel of the fact that she would be temporarily assigned to the Goochland garage when she returned to work on June 29th. However, she would be required to travel to other locations, including the Patterson Office, where Jim Wilson worked, as well.

54. Spaulding returned to work on June 29, 2009, and her new supervisor was David Deas.

55. On her return date, David Deas gave Spaulding a disciplinary notice (Step 1 of the Regional Attendance Plan) for having an absence of 138 days despite the fact that she had been out on approved short term disability.

56. On July 13, 2009, Spaulding amended her February 1, 2009, EEOC charge to include retaliation for being placed on the Regional Attendance Plan when she

was legitimately out on short term disability from February 11, 2009, until June 28, 2009.

57. On July 23, 2009, Pamela Dwyer and David Deas approached Spaulding about two "accommodations" which were tantamount to demotions.

58. The "accommodation" was for Spaulding to keep her job title, but be transferred to a desk position at remote location far away from her home. The position being offered was being downsized and the building that housed the office was being sold.

59. Dwyer and Deas offered Spaulding a second "accommodation" which was for a Maintenance Administrator position with a pay rate that was substantially less than her current pay and also based out of the same building that was for sale.

60. Dwyer and Deas informed Spaulding that absent these two options, she would have to deal with the current temporary assignment and whatever came along with it.

61. Upon Spaulding's refusal to take the demotions offered, Pam Dwyer, effective that day, removed Spaulding's company car, changed her reporting location to 24 miles farther from her home, and assigned her back to working for Gary Burton permanently, even though Dwyer knew Spaulding's therapist had recommended no contact with Gary Burton. Other options were available at the time.

62. On August 3rd, one week later, Spaulding was suspended without pay for not cleaning out the company car. Spaulding was not given access to the vehicle to clean it. Mr. Burton used insubordination as the catalyst for the suspension.

63. In November 2009, Spaulding changed to an evening shift in order to try and avoid contact with Gary Burton.

64. On February 23, 2010, Spaulding received her first poor performance evaluation of her career for alleged time sheet errors while under Gary Burton's supervision.

65. Spaulding had efficiency ratings (99.7% or better) and other performance related numbers that were well above the required levels.

66. Spaulding was accused of failing to sign off on her timesheets, but was not presented with any such instance prior to her evaluation or since.

67. Additionally, Spaulding states that time sheet errors are frequently made by employees, but need not be the subject of a lowered evaluation.

68. In March 2010, Spaulding was accused of inappropriate use of company resources and placed under investigation.

69. The accusation came after Spaulding sent two emails to co-workers which were work-related in nature.

70. Spaulding was accused of sending personal emails in this instance while she has seen emails which were very personal in nature sent by co-workers and managers alike in the same timeframe.

71. To the best of her knowledge, none of these co-workers were placed under company investigation.

72. The Plaintiff filed a second and separate EEOC charge (#438-2010-00775) on May 20, 2010, due to the datedness of the initial charge and continued instances of harassment.

73. Until 2010, Spaulding had not had any negative criticisms of her work performance until after she complained of unfair treatment and workplace harassment.

74. Until 2009, Spaulding had not been subject to any disciplinary action from the company until after she complained of unfair treatment and workplace harassment.

75. Until 2009, Spaulding had not been subjected to suggestions that she be demoted.

76. Based on the fact that Spaulding suffered several adverse actions after she filed her initial EEOC charge on February 12, 2009, and the July 13, 2009, amendment, she was subjected to false accusations about her work; written up for attendance issues while on short-term disability; forced to work in Verizon various field offices under the supervision of retaliatory managers; presented with demotions masked as accommodations; had her performance rated unfavorably; and been subjected of unfair internal investigations, and unfairly suspended without pay.

77. Spaulding continues to receive mental health treatment to manage the stress, fear of continued retaliation, and humiliation from the actions outlined above.

## COUNT I
### Retaliation

78. The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

79. Defendant, through its supervisory employees, agents, and managers, retaliated against Spaulding by subjecting her to several adverse employment actions after she filed EEOC charges of discrimination based on sex, disability, and retaliation.

80. The filing of an EEOC charge is a protected activity under federal civil rights statutes.

81. Defendant unlawfully changed the terms, conditions, and privileges of Spaulding's employment after she filed Charges of Discrimination with the EEOC between February 2009 and September 2010.

82. As a direct and proximate cause of this retaliation, Spaulding has suffered and continues to suffer injury, including loss of promotional opportunities and future employment opportunities with the company, severe emotional pain and suffering, mental anguish, humiliation, litigation expenses, attorney's fees and costs, and other miscellaneous injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on the above-stated Count, and in addition, prays that this Court:

### COUNT I

### Retaliation

a. Award Plaintiff compensatory damages for Count I in the amount of $300,000.00;

b. Award Plaintiff punitive damages for Count I in the amount of $300,000.00;

c. Award Plaintiff reasonable attorney's fees and costs of this action, including any expert fees, pursuant to 42 U.S.C. § 2000e-5(k) and Section 113 of the Civil Rights Act of 1991, and 42 U.S.C. § 12205 of the Americans with Disabilities Act of 1990, as amended; and

d. Award such other and further relief to Plaintiff as may be appropriate in these circumstances.

### Jury Request

**A TRIAL BY JURY IS DEMANDED**

Dated: June 28, 2011

Respectfully Submitted,

SHERRI R. SPAULDING

By *[signature]*

Of Counsel

Pamela J. Branch (VSB # 41008)
Barbara A. Queen (VSB # 47314)
Lisa K. Lawrence (VSB # 34597)
LAWRENCE & ASSOCIATES
701 East Franklin Street, Suite 800
Richmond, Virginia 23219
(804) 643-9343 (office)
(804) 643-9368 (facsimile)
Email: pbranch@lawrencelawyers.com